LOGAN, Circuit Judge.
 

 Brent Gundersen and Herman Graulich are defendants in a federal criminal trial being conducted in Denver, Colorado.
 
 [1]
 
 Gundersen resides in Salt Lake City, Utah, and Graulich resides in Miami, Florida.
 
 *582
 
 Both have been adjudicated indigent and are represented in the proceedings by appointed counsel. Their trial is underway and is expected to last approximately one month.
 

 The district court here had entered an order, apparently upon the authority of 18 U.S.C. § 4285, ordering the United States Marshal to arrange travel and “hotel funds as well as subsistence for staying in Denver,” during the pendency of defendants' trials. Order dated Aug. 19, 1992. The United States Marshal refused to provide subsistence expenses after defendants were transported to Denver, taking the position that § 4285 does not permit their payment. The refusal was brought to the attention of the court by oral motion to force the payment. In their motions, defendants claimed that they would have to exist as street people throughout the trial, allegedly impairing their ability to cooperate with counsel and to aid in their defense at trial. In response, the court agreed with the Marshal’s reading of § 4285 and issued an “Order for Modification of Conditions of Bond Release” pursuant to 18 U.S.C. § 3142(c), ordering defendants to reside in a halfway house during the trial. The order required defendants to comply with all general rules and regulations of the house, including random urinalysis, curfew hours, and scheduled leaves to attend court and consult with counsel. Order dated Sept. 1, 1992. This order was later rescinded when defendants represented to the court that they would have housing and food for at least some period of time during the trial, allegedly by borrowing or receiving charity from friends and relatives.
 

 I
 

 The defendants have not directly appealed the district court order denying their motion to be provided subsistence during the trial. They did file a habeas action in this court challenging the district court’s order of confinement in the halfway house, but now seek to withdraw that petition.
 
 [2]
 
 They also filed what they labeled a “Petition for Emergency Writ of Mandamus” in this court, contending that the government has a statutory or constitutional obligation to provide their subsistence during trial, considering their extreme indigency status and the distance of the trial from their homes.
 

 “ ‘The traditional use of the writ in aid of appellate jurisdiction both at common law. and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.’ ”
 
 Mallard v. United States Dist. Court,
 
 490 U.S. 296, 308, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989) (quoting
 
 Roche v. Evaporated Milk Ass’n,
 
 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). In
 
 Dalton v. United States (In re Dalton),
 
 733 F.2d 710, 717 (10th Cir.1984),
 
 cert. dismissed,
 
 469 U.S. 1185, 105 S.Ct. 947, 83 L.Ed.2d 959 (1985), this court identified five nonconclusive factors to assist in determining whether a writ of mandamus should issue. Among those factors is the requirement that “the party seeking the writ has no other adequate means to secure the relief desired.”
 
 Id.
 

 Petitioners are therefore entitled to a writ of mandamus only if they are without any other legal remedy. Specifically, mandamus cannot be used as a substitute for appeal.
 
 In re Vargas,
 
 723 F.2d 1461, 1468 (10th Cir.1983). In reality, petitioners here are seeking reversal of the district court’s rescission of its earlier order that required the government to provide them with funds for subsistence during trial. As such, petitioners are effectively appealing the order of the district court. Thus, if appeal is available to petitioners as a means of redress, their case is not appropriate for mandamus relief.
 

 We are satisfied that the district court’s order denying subsistence is an appealable order, whether viewed as a rescission of' its prior subsistence order, as a modification of its order granting bail (the confinement order designating the halfway house referenced the statutory provisions on bail), or simply as a denial of defen
 
 *583
 
 dants’ oral motion for subsistence funds during trial. A release or detention order, or a decision denying revocation or amendment of such an order, is appealable.
 
 See
 
 18 U.S.C. § 3145;
 
 Stack v. Boyle,
 
 342 U.S. 1, 6-7, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951) (holding that order denying motion to reduce bail is final decision appealable under 28 U.S.C. § 1291 and
 
 Cohen v. Beneficial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949));
 
 United States v. Foster,
 
 278 F.2d 567, 569 (2d Cir.) (“[I]n the rare case where the movant contends the denial of the motion [to extend bail limits] is an arbitrary exercise of discretion and violates his constitutional rights, we believe the order should be appealable.”),
 
 cert. denied,
 
 364 U.S. 834, 81 S.Ct. 48, 5 L.Ed.2d 60 (1960). The situation before us is sufficiently analogous to conditions of bail and the situations treated in
 
 Stack
 
 and
 
 Foster
 
 that, even if it is not a “final decision” subject to appeal under 28 U.S.C. § 1291, the
 
 Cohen
 
 collateral order exception applies. The order fully disposes of the defendants’ eligibility for subsistence funding; the issue does not remain open; the issue is collateral to the issues in the ongoing criminal trial; and the matter is too important to be denied review. Mandamus, therefore, is inappropriate.
 

 The Ninth Circuit has occasionally construed a petition for a writ of mandamus as a notice of appeal.
 
 See Clorox Co. v. United States Disk Court,
 
 779 F.2d 517, 520 (9th Cir.1985) (construing petition for writ of mandamus as notice of appeal when all parties had notice of further appellate proceedings and law regarding appropriateness of direct appeal had changed between filing of petition and consideration of case);
 
 Diamond v. United States Disk Court,
 
 661 F.2d 1198, 1198 (9th Cir.1981) (indicating in dicta that fairness would justify construction of petition for mandamus as notice of appeal);
 
 Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc),
 
 652 F.2d 793, 795 (9th Cir.1981) (construing petition for writ of mandamus as notice of appeal). In extraordinary situations, this court has construed a notice of appeal as a petition for a writ of mandamus.
 
 See Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),
 
 911 F.2d 380, 387 (10th Cir.1990);
 
 State Farm Mut. Auto. Ins. Co. v. Scholes,
 
 601 F.2d 1151, 1154 (10th Cir.1979).
 

 The Supreme Court in
 
 Stack
 
 dismissed a habeas corpus petition that raised the issue of excessiveness of bail upon its holding that a bail reduction motion was a final appealable order. 342 U.S. at 7, 72 S.Ct. at 4. But in a recent decision,
 
 Smith v. Berry,
 
 — U.S. — , 112 S.Ct. 678, 116 L.Ed.2d 678 (1992), the Supreme Court took an expansive view of what may constitute a notice of appeal. There a prison inmate, after having filed a void notice of appeal, filed an appellate brief within the time allotted for taking a regular appeal. The Supreme Court, stating that the courts are to construe liberally the requirements of Fed.R.App.P. 3, held that the brief was the functional equivalent of a notice of appeal if it fulfilled Rule 3’s requirements concerning notice. A notice of appeal must specify the party or parties taking the appeal, designate the order from which the appeal is sought, and name the court to which the appeal is taken.
 
 Id.
 
 R. 3(c). In the instant case the “Petition for Emergency Writ of Mandamus” specifies both defendants as petitioners and the United States of America as respondent; it challenges the district court’s order that eliminated subsistence expenses from that court’s previous order; and the petition was directed to this appellate court in its request for relief. This gives the United States the notice that would normally be given by an ordinary notice of appeal from a district court’s order.
 

 Other circumstances also make this case extraordinary and create equities in favor of Gundersen and Graulich. The modification order eliminating direct payment of subsistence expenses and directing the defendants to reside at the halfway house during trial was entered on September 1. Both the habeas and “emergency” mandamus petitions were filed in the court of appeals that day. On September 3 we directed the parties to brief the constitutional aspects' of the entitlement to funds for subsistence'and lodging during trial, such briefs to be filed by September 9. Had this
 
 *584
 
 court acted promptly to dismiss the petition for mandamus, plaintiffs would have had sufficient time to file a proper notice of appeal from the district court’s order within the ten days specified by Fed.R.App.P. 4(b). Considering these facts, we believe it is appropriate to construe the emergency mandamus petition as a notice of appeal from the district court’s modification order. We therefore turn to the merits.
 

 II
 

 We are in agreement with the two district courts that have construed 18 U.S.C. § 4285 that the statute does not authorize payment of subsistence during the period of trial; it authorizes payment only for the travel to court and subsistence during the period of travel.
 
 [3]
 

 See United States v. Nave,
 
 733 F.Supp. 1002 (D.Md. 1990);
 
 United States v. Badalamenti,
 
 No. 84-Cr.-236 (PNL), 1986 WL 8309 (S.D.N.Y.July 22, 1986).
 

 Petitioners have pointed directly to no other statute except 28 U.S.C. § 1821(a), dealing with payments of expenses of witnesses, and the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1), permitting counsel for an indigent to obtain at government expense investigative, expert, “or other services necessary for an adequate defense.” More promising as authority, we believe, is the Pretrial Services Act, 18 U.S.C. §§ 3152-3156. That act establishes responsibility with the Pretrial Services Agency for various aspects of supervising and reporting on defendants released before trial under the Bail Reform Act. Pretrial services functions include the following:
 

 (4) Operate or contract for the operation of appropriate facilities for the custody or care of persons released under this chapter including residential halfway houses, addict and alcoholic treatment centers, and counseling services.
 

 (7) Assist persons released under this chapter in securing any necessary employment, medical, legal, or social services.
 

 18 U.S.C. § 3154(4), (7). Defendants, apparently released on their own recognizance pursuant to 18 U.S.C. § 3142(b), are “persons released under this chapter” for purposes of the Pretrial Services Act. Subsection (4) places operation of facilities for the care of defendants released before trial, including halfway houses, in the control of the Agency. Subsection (7), with its reference to securing of social services, would appear to at least authorize the Agency to help provide defendants released before trial with the necessities of life.
 
 See Nave,
 
 733 F.Supp. at 1003.
 

 A reasonable construction of that act, we believe, and one that avoids the most difficult constitutional questions, is that the act requires the Agency to provide food and shelter for persons in defendants’ position who can establish genuine need.
 

 We believe, however, that we must decide one of the constitutional issues presented in this case, whether providing defendants food and shelter only through residency in a government-managed facility violates their constitutional rights. Our answer is that it would not, as long as the conditions imposed upon defendants are not unduly onerous and permit them sufficient contact with counsel and sufficient release time to prepare reasonably their defense.
 

 For purposes of this analysis we assume, without deciding, that the Supreme Court, following the line of cases including
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), would rule that the government must provide a truly indigent defendant with sufficient subsistence to enable him the “opportunity to participate meaningfully in the judicial proceeding in which his liberty is at stake.”
 
 Id.
 
 at 76,
 
 *585
 
 105 S.Ct. at 1092. Nothing in the Constitution, however, prevents the government from exercising cost control or requires that monies be handed to indigents to allow them to obtain food and housing of their own choice. Even though a defendant’s extreme indigency may make it something of a Hobson’s choice, as long as the individual can choose to take the food and lodging offered at a halfway house or remain outside of it, the individual is not being imprisoned for debt or subjected to excessive bail. We believe, however, that the restrictions imposed upon defendants accepting the food and shelter at a halfway house, for example, may be no more onerous than are required to protect institutional concerns for order and the welfare of all the inhabitants. Thus, restrictions on leaving the institutional setting during working hours applicable to other inhabitants might not be justifiably applied to persons in defendants’ situation.
 

 We wish to make clear that the choice is not “custody” versus freedom but rather a choice between fending for themselves (and forgoing any claim for food and housing) and accepting housing in available government facilities with such restrictions as are necessary for institutional purposes. Defendants who choose to accept government housing for food and shelter must be free to terminate that choice at any time during business hours of the facility. To the extent the district court’s order can be read to require the defendants to reside at the halfway house as a condition of bail solely because of their indigency we disapprove of it.
 

 The order of the District Court for the District of Colorado overruling its prior order providing funds is therefore REVERSED, and this case is REMANDED to the district court for further proceedings consistent herewith.
 

 The mandate shall issue forthwith.
 

 [1]
 

 . Although defendants’ trial may have concluded by the time this opinion is filed, there is no question here that defendants present a justicia-ble case or controversy that will not be mooted by the trial’s conclusion. Depending on how we resolve the issue, they may be entitled to reimbursement of living expenses they incurred. Additionally, because trials involving the issue presented here will often be concluded before the appellate process is complete, and because indigent defendants are presumably routinely required to stand trial in locations far from their homes, the issue presented here, as in
 
 Roe v. Wade,
 
 410 U.S. 113, 124-25, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), is not moot. It is "’capable of repetition, yet evading review.’ ’’
 
 Id.
 
 at 125, 93 S.Ct. at 713 (quoting
 
 Southern Pac. Terminal Co. v. ICC,
 
 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)).
 

 [2]
 

 . We grant defendants’ motion to withdraw their habeas petition.
 

 [3]
 

 . The statute provides, in pertinent part:
 

 Any judge or magistrate of the United States ... may, when the interests of justice would be served thereby ..., direct the United States marshal to ... furnish the fare for [the defendant's] transportation to the place where his appearance is required, and in addition may direct the United States marshal to furnish that person with an amount of money for subsistence expenses to his destination____
 

 18 U.S.C. § 4285.